In re COUCH COTTON MILLS CO.

(District Court, N. D. Georgia. June 11, 1921.)

No. 7246.

1. **Courts** ⬤⟹474—**Time of filing proceeding governs in determining priority in appointment of receivers.**

Where receivers are appointed by courts of concurrent jurisdiction, it is a rule of comity that courts will look to the priority in the time of filing the proceedings in determining the right to possession of assets.

2. **Bankruptcy** ⬤⟹20(2)—**Receiver in bankruptcy has priority over receiver of state court in certain matters.**

As between a court of bankruptcy and other courts of equity, priority of acquiring jurisdiction is not conclusive in many matters, such as proceedings to perfect or enforce liens or titles invalidated by bankruptcy, creditors' bills and receiverships filed against bankrupts, or stockholders' bills to settle the rights or control of the stockholders of bankrupt corporations.

3. **Bankruptcy** ⬤⟹20(2)—**Rights of receiver appointed by state court are superior to the rights of receiver in bankruptcy where proceedings in state court were begun first.**

Although the receiver in bankruptcy holds possession of property, where the proceedings for a receiver in state court were commenced before bankruptcy proceedings, the rights of the receiver appointed by the state court are superior to those of the receiver in bankruptcy.

4. **Bankruptcy** ⬤⟹20(2)—**Rule of comity applies to case made by original bill in state court, but not as to amendment making substantially new case after bankruptcy proceeding.**

As between a court of bankruptcy and a state court, the rule of comity based on the priority of proceedings in the state court does not extend to amendments in the state court after commencement of bankruptcy proceedings, if the amendment substantially changes the case.

In Bankruptcy. In the matter of the Couch Cotton Mills Company, bankrupt. Application of temporary receiver of state court for direction from the bankruptcy court to its receiver to surrender certain assets. Denied, with directions.

Spalding, McDougald & Sibley, of Atlanta, Ga., for intervener Penfield.

H. H. Turner, of Atlanta, Ga., for bankrupt.

Brandon & Hynds and A. S. Grove, all of Atlanta, Ga., for intervening creditors.

SIBLEY, District Judge. The Couch Cotton Mills Company was organized about June 1, 1920, to effect a consolidation of several manufacturing companies, including the Beaver Cotton Mills. The stock of the latter was exchanged for stock of the former with the exception of a single stockholder, Penfield. The Couch Company took a deed to the assets and assumed the operation of the Beaver mill. In November, 1920, Penfield, as a stockholder, in behalf of himself and other stockholders, filed a bill in Fulton superior court seeking a rescission for fraud of the merger, asking for recovery in damages as for a conversion of the assets of the Beaver Company, and praying injunction and a receiver for both companies. A restraining order was

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

granted against altering the status and a hearing set for January 8, 1921. The Couch Company, knowing of Penfield's dissatisfaction but in ignorance of his bill, ordered a rescission of the merger and an audit of the accounts on condition that the Beaver Company should assume the loss and operation of its mill since June 1st, and its proportion of the overhead expenses of the Couch Company during that time. Beaver Company held no stockholders' meeting to act on the proposal, and the restraining order then served prevented any further action by Couch Company. No hearing was had January 8th. On May 14, 1921, involuntary bankruptcy proceedings were begun against Couch Company and a receiver appointed with authority to continue operations of the factories for a limited time and purpose. He took charge of the Beaver mill and operated it for a few days. On May 17, 1921, Penfield amended his bill in the state court, asserting rights as a creditor of the Beaver Mills, and a temporary receiver was appointed ex parte for the assets of the Beaver Company. By authority of the state court, this temporary receiver is asking that the court of bankruptcy direct its receiver not to interfere with the possession and control of the Beaver mill by the state court receiver. A hearing on the question of permanent receiver is set before the state court for an early date.

[1] 1. The receiver of this court was first appointed and first in possession, having charge of the mill when the state court receiver was appointed; but neither fact is material. Courts of concurrent jurisdiction will not enter into a race with one another to appoint receivers nor permit their officers to scramble for first possession of assets as a basis of right. They will rather as a rule of comity look to the priority in the time of filing of the proceedings which invoke the jurisdiction in aid of which possession of the assets is sought.

[2] 2. But as between a court of bankruptcy, whose authority is derived from the Constitution of the United States, and other courts of equity, this priority is not conclusive, for in many matters the bankruptcy jurisdiction supersedes and excludes the ordinary jurisdiction. This is true of all proceedings to perfect or enforce liens or titles which are invalidated by the bankruptcy (In re Brinn [D. C.] 262 Fed. 527); of creditors' bills and receiverships filed against the bankrupt (In re Grafton Gas & Elec. Light Co. [D. C.] 253 Fed. 668); of stockholders' bills to settle the rights or the control of the stockholders of a bankrupt corporation (Bank of Andrews v. Gudger, 212 Fed. 49, 128 C. C. A. 505). But these instances may be laid aside here because the receiver of the state court is not a receiver for the bankrupt estate or for the creditors or stockholders of the bankrupt, but represents wholly adverse interests.

[3] 3. The bankrupt corporation was actually in possession of the property in dispute at the time of the bankruptcy, and this possession ordinarily entitles the bankruptcy court to take and protect its possession summarily, drawing to it all controversies over title and liens. The rule would apply here as against any proceedings filed subsequently to the bankruptcy petition, but does not solve the question of comity involved as to this bill filed previously. As to this bill the possession of

the bankrupt must be held to have been subject to its potentialities. Indeed, the possession seems to have been continued because the restraining order of the bill prevented any other disposition. The property was in gremio legis though in the bankrupt's possession, and the possession taken by the receiver of the bankruptcy court was subject to the same qualification. The rights under the rule of comity of a receiver appointed under this bill would relate to the time of its filing.

[4] 4. But it is not apparent that this temporary receiver was appointed on the case made by the original bill. The unexplained delay to act on it until after the bankruptcy indicated an abandonment of it, perhaps in view of the action of Couch Company authorizing rescission of the merger. There may be doubt whether the original bill set forth a cause of action that would justify the appointment of a receiver. He was appointed only after an amendment allowed ex parte setting up a substantially different cause of action. While this court should respect the priority of proceedings in the state court as to the original bill, the rule of comity would operate otherwise if the litigant in the state court should, after bankruptcy, seek to pervert the original bill to other and different uses, making a substantially new litigation.

5. Since the temporary receiver is not to administer but only to preserve, a function that can be continued by the bankruptcy receiver, and since a hearing is imminent in the state court, it is thought best not to change the custody of the estate pending that hearing. Leave is given by this court to its receiver to appear specially in the case in the state court and contest the appointment of a permanent receiver, if he is so advised, either because no sufficient case is shown on the face of the original bill, or because on the merits there is no case, or because in the discretion of that court under all the circumstances a receiver should not be appointed. These, of course, are all questions for the judgment of the state court. The receiver of this court will report here the conclusions of the state court when final instructions as to the disposition of the Beaver Mill now in the hands of the receiver here will be given.